IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARMANDO LONGORIA, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | C.A. NO. C-07-075 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| Respondent. | § | |

**MEMORANDUM AND RECOMMENDATION**
**ON RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

Petitioner is a former inmate of the Texas Department of Criminal Justice,

Criminal Institutions Division ("TDCJ-CID"), but is currently not incarcerated.

Proceeding pro se, petitioner filed this habeas corpus petition pursuant to 28 U.S.C.

§ 2254 on February 13, 2007.  (D.E. 1).  On March 23, 2007, respondent moved

for summary judgment, arguing that this Court lacks jurisdiction to address

petitioner's claims, and alternatively, that his petition is time barred and fails to

state a valid claim for habeas relief.  (D.E. 9).  For the reasons stated herein, it is

respectfully recommended that the respondent's motion for summary judgment be

granted.

**I.  BACKGROUND**

Respondent does not have lawful custody of petitioner pursuant to the

conviction he now attacks.  (D.E. 9, at 2).  On March 30, 2005, petitioner pleaded

guilty to attempted indecency with a child.  <u>Ex parte Longoria</u>, App. No. WR-14,964-02, at 78.  Pursuant to a plea agreement, he was sentenced to two years confinement in TDCJ-CID.  <u>Id.</u>  He was given 52 days credit for time he served in jail prior to sentencing.  <u>Id.</u>  On February 6, 2007, his sentence expired.  (D.E. 9, Ex. B, at 3).  Petitioner signed his federal habeas petition, but did not date the petition.  (D.E. 1, at 12).  He declared that his spouse would have hand delivered his petition to the Court.  <u>Id.</u>  Petitioner's petition was filed on February 13, 2007.

## II.  JURISDICTION

Respondent asserts that "[a]s a threshold issue, this Court does not have jurisdiction over [petitioner] pursuant to the sentence he currently attacks."  (D.E. 9, at 1).  Petitioner is no longer incarcerated for the offense.  He argues that this Court does have jurisdiction because the state's requirement that he register as  a sex offender for the rest of his life means that his sentence is not yet complete. (D.E. 21, at 1).

## A.    This Court Has Jurisdiction Over Claims Only Where a Petitioner is "In Custody."

A Court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The Supreme Court has held that a district

court has jurisdiction over a habeas petition only if the petitioner is "in custody" pursuant to the judgment under attack.  Maleng v. Cook, 490 U.S. 488, 490-91 (1989) (per curiam).  The custody requirement is not satisfied if the sentence imposed as a result of the conviction under attack has fully expired.  Id. at 492. The "in custody" determination is made at the time a habeas petition is filed. Zalawadia v. Ashcroft, 371 F.3d 292, 297 (5th Cir. 2004) (citing Spencer v. Kemna, 523 U.S. 1, 7 (1998)).  Furthermore, the "in custody" requirement is jurisdictional, so that the petitioner must be "in custody" at the time his habeas petition is filed in order for the Court to have jurisdiction to address the petition. Hendrix v. Lynaugh, 888 F.2d 336, 337 (5th Cir. 1989) (citing Maleng).

The Supreme Court has held that the "in custody" language of the habeas statute does not require that a petitioner be physically confined to challenge his sentence.  Maleng, 490 U.S. at 491.  The Supreme Court has explained that "[h]istory, usage and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus."  Jones v. Cunningham, 371 U.S. 236, 240 (1963).  For example, a petitioner may challenge his parole by a habeas petition.  Maleng, 490 U.S. at 491 (citation omitted).  The Fifth Circuit has

3

explained that "[u]sually, 'custody' signifies incarceration or supervised release, but in general it encompasses most restrictions on liberty resulting from a criminal conviction."  Pack v. Yusuff, 218 F.3d 448, 454 n.5 (5th Cir. 2000) (citing Jones, 371 U.S. 236); accord Zolicoffer v. U.S. Dep't of Justice, 315 F.3d 538, 540 (5th Cir. 2003) (per curiam) (quoting Pack).  However, "collateral consequences" of a conviction do not satisfy the "in custody" requirement.  Maleng, 490 U.S. at 492; accord United States v. Esogbue, 357 F.3d 532, 534 (5th Cir. 2004) (citing Maleng).  Collateral consequences include such things as the right "to vote, engage in certain businesses, hold public office, or serve as a juror."  Maleng, 490 U.S. at 491-92.

**B.     This Court Lacks Jurisdiction to Address Petitioner's Habeas Petition.**

Although the Fifth Circuit has not addressed whether sex offender registration satisfies the "in custody" requirement of the habeas statute, other federal circuits have concluded that it does not, and is only a collateral consequence of a petitioner's conviction.  Addressing a Washington sex offender registration law and finding that it constituted a collateral consequence of a petitioner's conviction, the Ninth Circuit explained:

> If [the sex offender law] is a genuine restraint on liberty, then [petitioner] is "in custody" and we may consider the merits of his habeas petition.  But if application of the sex offender law is merely a collateral

> consequence of [petitioner's] conviction, the federal courts are without habeas jurisdiction in this case....
>
> The precedents that have found a restraint on liberty rely heavily on the notion of a physical sense of liberty-that is, whether the legal disability in question somehow limits the putative habeas petitioner's movement....
>
> Unlike in these precedents, we do not see a significant restraint on [petitioner's] physical liberty. The sex offender registration and notification provisions apply to [petitioner] whether he stays in the same place or whether he moves.

Williamson v. Gregoire, 151 F.3d 1180, 1183-84 (9th Cir. 1998); see also Henry v. Lungren, 164 F.3d 1240, 1241-42 (9th Cir. 1999) (relying on Williamson to reach the same conclusion regarding California sex offender registration law); McNab v. Kok, 170 F.3d 1246, 1247 (9th Cir. 1999) (per curiam) (finding that Oregon's sex-offender statute does not place an offender "in custody").  The Sixth Circuit has also found that a sexual-predator statute is a collateral consequence of a petitioner's conviction, rather than a restraint on a petitioner's liberty that places him "in custody" for habeas purposes.  Leslie v. Randle, 296 F.3d 518, 522-23 (6th Cir. 2002) (addressing Ohio sex offender registration law).

Both the Ninth Circuit and the Sixth Circuit relied upon the Supreme Court's emphasis on a restraint of liberty as constituting custody in their determination that sex offender registration is a collateral consequence of a conviction.  See Maleng, 490 U.S. at 491 (noting that a parolee's release is conditioned upon reporting to a

5

parole officer, remaining in a particular place, and refraining from activities).

Similarly, the Texas sex offender registration law does not restrict petitioner's

liberty, and is considered by Texas courts to be a non-punitive consequence of his

conviction.  See Mitschke v. State, 129 S.W.3d 130, 135 (Tex. Crim. App. 2004)

(en banc) (sex-offender registration requirements, loss of voting rights, inability to

possess firearms, and ineligibility for certain professional licenses are non-punitive

consequences of a guilty plea).  Finally, the Supreme Court, in addressing a sex

offender registration requirement, has "held that mere injury to reputation, even if

defamatory, does not constitute the deprivation of a liberty interest."  Connecticut

Dep't of Pub. Safety v. Doe, 538 U.S. 1, 6-7 (2003) (citing Paul v. Davis, 424 U.S.

693 (1976)); see also White v. Dretke, 2004 WL 2434411, at *2 (N.D. Tex. Oct.

29, 2004) (unpublished) (citation omitted) (stating that Texas sex offender

registration requirement is a collateral consequence), report & recommendation

adopted 2004 WL 3008609 (N.D. Tex. Dec. 28, 2004).

It is respectfully recommended that registration as a sex offender is a

collateral consequence of petitioner's conviction.  It is further respectfully

recommended that as it is a collateral consequence of his conviction, the

requirement that petitioner register as a sex offender does not render him "in

custody" for purposes of filing a federal habeas petition.  Thus, it is respectfully

6

recommended that this Court lacks jurisdiction to address petitioner's claims.

### III.  PETITIONER'S ALLEGATIONS

Petitioner raises the following claims in his petition for habeas relief:

(1)     He claims that he was denied due process because the state charged

him using a defective indictment, (D.E. 1, at 7);

(2)     He claims that he was coerced into accepting the plea agreement and

entered an involuntary plea of guilty, id. at 9, 11;

(3)     He claims that the state suppressed favorable evidence, id. at 10;

(4)     He claims that he received ineffective assistance of counsel because:

(a)     Counsel failed to file a motion to quash the defective

indictment, id.;

(b)     Counsel aided the prosecutor in suppressing favorable evidence,

id.;

(c)     Counsel failed to object to improper sentencing, id. at 11; and

(5)     He claims that his sentence was illegal, id.

### IV.  EXHAUSTION OF STATE REMEDIES

A federal writ of habeas corpus from an inmate in state custody shall not be

granted unless the inmate has exhausted his remedies at law in the state courts, or

there is an absence of state court remedies or circumstances that render state

7

remedies insufficient to protect the individual's rights.  28 U.S.C. § 2254(b)(1);

Fisher v. Texas, 169 F.3d 295, 302 (5th Cir. 1999) (citation omitted).  Respondent

does not dispute that petitioner exhausted his state court remedies before filing this

petition.  (D.E. 9, at 3).

## V.  STANDARD OF REVIEW

### A.    Federal Habeas Corpus Standard of Review Pursuant to the AEDPA.

A federal writ of habeas corpus is available to a state prisoner only if he is

being held in violation of the Constitution, laws, or treaties of the United States.

Boyd v. Scott, 45 F.3d 876, 881 (5th Cir. 1994) (per curiam).  Pursuant to the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which is

applicable to habeas petitions filed after its effective date, "federal habeas relief is

only merited where the state court decision is both incorrect *and* objectively

unreasonable."  Morrow v. Dretke, 367 F.3d 309, 313 (5th Cir. 2004) (emphasis in

original) (citing Williams v. Taylor, 529 U.S. 362, 411 (2000)); see also Riddle v.

Cockrell, 288 F.3d 713, 716 (5th Cir. 2002).  The AEDPA's provisions "ensure

that state-court convictions are given effect to the extent possible under law."  Bell

v. Cone, 535 U.S. 685, 693 (2002) (citation omitted).

The Supreme Court has concluded that the "contrary to" and "unreasonable

application" clauses of 28 U.S.C. § 2254(d)(1) have independent meanings.  Id. at

694 (citing <u>Williams</u>, 529 U.S. at 404-05).  The <u>Bell</u> Court explained:

> A federal court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principles but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one.

<u>Id.</u> (citations omitted).

The Fifth Circuit has held that federal courts may not grant a writ of habeas corpus merely on the finding of an error by a state court, but rather only where a "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts."  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (citation omitted).  A federal habeas court is to review only a state court's decision, and not the written opinion explaining its decision.  <u>Anderson v. Johnson</u>, 338 F.3d 382, 390 (5th Cir. 2003).  The state court's "ultimate decision" is to be tested for reasonableness, "not every jot of its reasoning."  <u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001).  Furthermore,

a state court need not cite, or "even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"  Mitchell v. Esparza, 540 U.S. 12, 16 (2003) (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

Absent a direct conflict with Supreme Court authority, habeas relief is only available if a state court decision is unreasonable.  Montoya v. Johnson, 226 F.3d 399, 404 (5th Cir. 2000).  A federal district court "must reverse when [it] conclude[s] that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'"  Gardner v. Johnson, 247 F.3d 551, 560 (5th Cir. 2001).  The focus of the "unreasonable application" test of § 2254(d) is "on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of evidence."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam).

Finally, "[t]he AEDPA requires that [the Court] presume correct the state court's findings of fact unless the petitioner 'rebut[s] the presumption of correctness by clear and convincing evidence.'"  Morrow, 367 F.3d at 315 (quoting 28 U.S.C. § 2254(e)(1)); see also Jackson v. Johnson, 150 F.3d 520, 524 (5th Cir. 1998).  The presumption of correctness is accorded to adjudications made by a

state court during review of a petitioner's state petition for habeas corpus relief.

See Morrow, 367 F.3d at 315.  The burden to rebut the presumption of correctness

remains on petitioner even if the state "hearing was a 'paper' hearing and may not

have been full or fair."  Id. (citing Valdez v. Cockrell, 274 F.3d 941, 950-51 (5th

Cir. 2001)).  The Fifth Circuit has stated that the presumption of correctness also

applies to mixed questions of law and fact.  Valdez, 274 F.3d at 948 n.11 ("The

presumption of correctness not only applies to explicit findings of fact, but it also

applies to those unarticulated findings which are necessary to the state court's

conclusions of mixed law and fact) (citations omitted).  Findings of fact may be

implied from conclusions of law.  See Goodwin v. Johnson, 132 F.3d 162, 183-84

(5th Cir. 1997).

**B.      Motion for Summary Judgment Standard of Review.**

Rule 56 of the Federal Rules of Civil Procedure applies to federal habeas

corpus cases.  Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000).  Summary

judgment is appropriate when there is no disputed issue of material fact, and one

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A court

must consider the record as a whole by reviewing all pleadings, depositions,

affidavits, and admissions on file, and by drawing all reasonable inferences in

favor of the party opposing the motion.  Caboni v. Gen. Motors Corp., 278 F.3d

11

448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).  The controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that summary judgment is not appropriate.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fields v. City of S. Houston , 922 F.2d 1183, 1187 (5th Cir. 1991).  The non-movant cannot rest on the mere allegations of the pleadings to sustain his burden, but must set forth material controverted facts in the response to the motion for summary judgment. Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.  ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438,

12

441 (5th Cir. 1995); Celotex, 477 U.S. at 322-23.

# VI.  DISCUSSION

## A.    Application of the AEDPA's Deference to Petitioner's Claims.

The Texas courts have already considered and rejected petitioner's claims.
Ex parte Longoria, App. No. WR-14,964-02, supp. at cover.  The claims that he is
pursuing in this petition were raised in his state habeas corpus application.  Id. at 2-
40; (D.E. 1, at 7-11).  The Texas Court of Criminal Appeals denied his state habeas
application without written order.  Id. at supp. at cover.  This denial of petitioner's
application, even though it does not contain a written opinion, is not silent or
ambiguous.  See Ex parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)
(holding a "denial" signifies an adjudication on the merits).  It is a decision on the
merits and is entitled to the AEDPA's deference.  28 U.S.C. § 2254(d); see also
Neal v. Puckett, 239 F.3d 683, 686 (5th Cir. 2001) (in the context of federal habeas
proceedings, "adjudication 'on the merits' is a term of art that refers to whether a
court's disposition of the case was substantive").

Thus, deference to the state court decision is mandated by § 2254(d).  See
Morrow, 367 F.3d at 313.  Petitioner is not entitled to federal habeas relief unless
he can demonstrate that the state court's adjudication on his claims was "contrary
to, or involved an unreasonable application, of clearly established federal law" or

was "based on an unreasonable determination of the facts."  28 U.S.C. § 2254(d).

## B.   Petitioner's Claims are Time Barred.

### 1.   Statute of Limitations Pursuant to the AEDPA.

The AEDPA provides a one-year statute of limitations for state prisoners to challenge a conviction by the filing of a federal petition for habeas corpus relief. Prieto v. Quarterman, 456 F.3d 511, 514 (5th Cir. 2006) (citing 28 U.S.C. § 2241(d)).  A petitioner has one year from the date his conviction becomes final to file his federal petition for habeas relief.  Id.  A properly filed state application for post-conviction relief tolls the AEDPA period of limitations for the entire time the state application is pending.  Id.  A state application for post-conviction relief is "*properly* filed when its delivery and acceptance are in compliance with the applicable laws and rules governing filings."  Artuz v. Bennett, 531 U.S. 4, 8 (2000) (italics in original).  A state application for post-conviction relief is pending "until the application has achieved final resolution through the State's post-conviction procedures."  Carey v. Saffold, 536 U.S. 214, 220 (2002).  While a state application for post-conviction relief generally tolls the AEDPA limitations period, a state application for habeas relief that is not filed within the federal limitations period does not toll the limitations period under § 2244(d)(2).  Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000).

14

Under "rare and exceptional circumstances," equitable tolling may also apply pursuant to the AEDPA.  In re Wilson, 442 F.2d 872, 875 (5th Cir. 2006) (per curiam) (quoting Fierro v. Cockrell, 294 F.3d 674, 682 (5th Cir. 2002)). Equitable tolling may only apply "'where it is necessary to preserve a plaintiff's claims when strict application of the statute of limitations would be inequitable.'" Id. (quoting Fierro, 294 F.3d at 682).  Petitioner's failure to comply with the AEDPA's statute of limitations must result from "an extraordinary factor beyond the plaintiff's control" that prevents filing on time.  Felder v. Johnson, 204 F.3d 168, 174 (5th Cir. 2000).  Ignorance of the law is insufficient to warrant equitable tolling, even for a pro se petitioner.  See Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999).

## 2.     Petitioner Has Not Demonstrated That He is Entitled to Tolling of the Limitations Period.

Petitioner's conviction became final on April 29, 2005, which was the end of the thirty-day period that he had to file a notice of appeal.  See Tex. R. App. P. 26.2(a)(1).  Thus, without tolling, he had until April 29, 2006 to either file a state habeas application to toll the limitations period or file his federal habeas petition. On October 25, 2005, he filed his state habeas application.  Ex parte Longoria, App. No. WR-14,964-02, at 10.  On February 8, 2006, the Texas Court of Criminal Appeals denied his application without written order.  Id. at supp. at cover.

15

Therefore, his state habeas application tolled the federal limitations period for 105 days, and his federal petition should then have been filed no later than August 14, 2006.  Petitioner did not file his federal habeas petition until February 13, 2007, or nearly six months after the limitations period expired.

Petitioner argues that he is entitled to equitable tolling of the limitations period because the state trial court entered a judgment nunc pro tunc on November 23, 2005, thereby actively misleading him and creating rare and exceptional circumstances that justify the application of equitable tolling.  (D.E. 20, at 4).  The court's judgment nunc pro tunc states that it is to be treated as if signed on April 1, 2005.  Ex parte Longoria, App. No. WR-14,964-02, at 87.  In essence, petitioner argues that the court's judgment nunc pro tunc restarted the appellate time clock.  However, even if petitioner's contention were true, he does not explain how the court's entry of a judgment nunc pro tunc to correct a clerical error affected any of the claims in his state habeas application, which had already been filed.  Furthermore, the state court's entry of a judgment nunc pro tunc quite clearly did not keep petitioner from filing a state habeas application, as his state habeas application was filed before the entry of the judgment nunc pro tunc.  See Bevers v. Dretke, 82 Fed. Appx. 140, 141 (5th Cir. Dec. 5, 2003) (per curiam) (unpublished) (statute of limitations began running when nunc pro tunc order was

16

issued and petitioner failed to establish equitable tolling applied).

Petitioner has not demonstrated that the state court's entry of the judgment nunc pro tunc was a rare and exceptional circumstance that created an impediment to his filing a federal habeas petition in a timely manner.  It is respectfully recommended that petitioner is not entitled to equitable tolling of the AEDPA's limitations period and that his petition should be dismissed as time barred.

**C.     Petitioner's Claim That the Indictment Was Defective Does Not Entitle Him to Federal Habeas Relief.**

Petitioner claims that his conviction is not valid because the indictment was defective.  (D.E. 1, at 7).  He alleges that the indictment did not give him notice of the charged offense, failed to allege a culpable mental state, and failed to allege the elements of the charged offense.  Id. at 7-11.

**1.     Standard of Review for a Defective Indictment.**

The Fifth Circuit has held that a Court may "consider the sufficiency of the indictment as a basis for habeas relief if the mistake in the indictment is so fatally defective that it deprives the convicting court of jurisdiction."  Riley v. Cockrell, 339 F.3d 308, 313-14 (5th Cir. 2003) (citation omitted).  A district court is "required to accord due deference to the state courts' interpretations of its own law that a defect of substance in an indictment does not deprive a state trial court of jurisdiction."  McKay v. Collins, 12 F.3d 66, 69 (5th Cir. 1994) (citation omitted).

17

The Fifth Circuit has noted that "Texas courts have held ... that failure to include an essential element of the crime charged, which constitutes a defect of substance, does not deprive the trial court of jurisdiction." Id. (citing Studer v. State, 799 S.W.2d 263 (Tex. Crim. App. 1990)). The McKay court elaborated on the minimal requirements for a constitutionally acceptable indictment:

> The standard for determining the sufficiency of an indictment is based upon practical, not technical considerations. The test involves minimal constitutional standards, not whether a better indictment could have been written. The essential elements of the offense, including knowledge or intent, must be included in the indictment but need not be expressed in any specific terms. The "plain and sensible meaning of the language used" may give the defendant notice sufficient to meet the requirements of the sixth amendment. An indictment should be found sufficient unless no reasonable construction of the indictment would charge the offense for which the defendant has been convicted.

Id. (internal citations omitted). The state court's implicit finding that the indictment was "not fundamentally defective should end the inquiry." Id. at 70.

### 2.      Petitioner's Claim Does Not Entitle Him to Relief.

In denying petitioner's state habeas application, the Texas Court of Criminal Appeals implicitly found that the indictment used to charge him was not fundamentally defective. Ex parte Longoria, App. No. WR-14,964-02, at supp. at cover. The "plain and sensible meaning of the language used," particularly that he

was accused of "laying on top of [P.F.] and placing his hand up her shirt," "with the specific intent to commit the offense of indecency with a child," (D.E. 1, at 13), was sufficient to put him on notice that he was charged with attempted indecency with a child.  The indictment clearly charges him with the offense for which he pleaded guilty.  Additionally, petitioner has not proven that the state court's finding that the indictment is sufficient is unreasonable or contrary to federal law.

It is respectfully recommended that petitioner's claim that the indictment was so defective that it deprived him of his constitutional right to due process is without merit.

**D.  Petitioner's Claim That He Was Coerced Into Accepting the Plea Agreement and Involuntarily Pleaded Guilty is Without Merit.**

Petitioner claims that he was coerced into accepting the plea agreement and that his guilty plea was involuntary.  (D.E. 1, at 9, 11).

**1.  Standard of Review for Voluntariness of a Guilty Plea.**

The Fifth Circuit has held that "[t]o be valid, a guilty plea must be voluntary, knowing and intelligent."  United States v. Washington, 480 F.3d 309, 315 (5th Cir. 2007).  The Supreme Court has established that "[t]he longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  Hill v. Lockhart, 474 U.S. 52, 56 (1985) (citation omitted); accord

United States v. Brown, 328 F.3d 787, 789 (5th Cir. 2003) (quoting Hill).  In

determining whether a plea is voluntary, the Court is to consider all relevant

circumstances.  Washington, 480 F.3d at 315.

For a plea to be valid, the defendant must have notice of the charges against

him, understand the constitutional protections that he has waived, and have advice

from competent counsel.  Id. (citation omitted).  Furthermore, the defendant must

be competent, and the plea must "not be the product of 'actual or threatened

physical harm, or ... mental coercion overbearing the will of the defendant' or of

state-induced emotions so intense that the defendant was rendered unable to weigh

rationally his options with the help of counsel."  Matthew v. Johnson, 201 F.3d

353, 365 (5th Cir. 2000) (quoting Brady v. United States, 397 U.S. 742, 750

(1962)).  The trial court must inform the defendant of the consequences of his plea,

but "[t]he defendant need only understand the direct consequences of the plea; he

need not be made aware of every consequence that, absent a plea of guilty, would

not otherwise occur."  United States v. Hernandez, 234 F.3d 252, 255 (5th Cir.

2000) (per curiam).

Finally, where a defendant has testified at a "hearing that his plea was freely

and voluntarily made, that he understood the nature of the charges against him and

the nature of the constitutional rights he was waiving[, t]hese statements act to

create a presumption that in fact the plea is valid." Matthew, 201 F.3d at 366

(citing Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)).

### 2.      Petitioner's Guilty Plea Was Voluntary and Not Coerced.

Petitioner claims that his guilty plea was involuntary because of

"intimidation, threats, coercion and [deception] by not only [the assistant district

attorney], [b]ut by the gross deception of petitioner's trial counsel." (D.E. 16, at

13). He claims that the assistant district attorney and his counsel threatened him

because they told him that if he failed to accept the proffered plea agreement, he

would be re-indicted as an habitual felony offender, which would cause him to face

a greatly enhanced sentence. Id. at 14; (D.E. 1, at 9). He claims that he insisted he

was not guilty and presented the prosecutor and his counsel with a signed affidavit

from the victim that recanted her accusations. Id. Finally, petitioner claims that

his plea was not voluntary because he was not aware of the sex offender

registration requirement. (D.E. 1, at 11).

### a.      Petitioner's Allegation That His Counsel Coerced His Plea.

The Fifth Circuit has established that:

> A defense attorney should make informed predictions
> about the consequences of either pleading guilty or going
> to trial. We have held that a defense lawyer's stern
> warnings about the client's chances of success at trial, the
> potential for prison time, and the lawyer's potential
> withdrawal do not compromise voluntariness. Even if

> [the petitioner's] lawyer warned that he would almost
> certainly lose at trial and face a harsh sentence, these
> were warnings, not threats.

United States v. Cothran, 302 F.3d 279, 284 (5th Cir. 2002) (citations omitted).

Petitioner has failed to show that his attorney's warnings about the potential

sentence he could receive - up to 99 years or life imprisonment rather than the two

years offered by the state with the plea agreement - compromised the voluntariness

of his plea. His counsel's warnings do not constitute threats. In response to

petitioner's state habeas application, his counsel swore in an affidavit that:

> Here, Applicant had two prior, sequential non-
> state-jail felony convictions. The first was 82-636-B
> (burglary of a habitation), for which he received a sixty-
> year sentence. Said sentence was appealed and later
> affirmed. The second was 82-653-B (escape). He
> received a five-year sentence for this offense. Thus,
> Applicant could have been charged as a habitual felony
> offender in the instant case. Thus, the range of
> punishment for the instant offense would have been from
> twenty-five to ninety-nine years or life. I discussed this
> with Applicant and this formed the basis of his decision
> to enter a plea for two years....
>
> During my discussions with Applicant, Applicant
> told me that he would accept a four-year offer if the State
> would offer four years in exchange for his guilty plea.
> Furthermore, I explained to Applicant the crime he was
> pleading guilty to. Applicant clearly understood my
> explanation. Similarly, he also understood the applicable
> punishment range for this offense. Applicant never
> experienced coercion, force, intimidation, or deception
> prior to entering his plea.

Ex parte Longoria, App. No. WR-14, 964-02, at supp. p. 13-15.

The record establishes that petitioner's counsel advised him of the best options available given the facts of his case and state law.  The state court adopted the assertions made by petitioner's counsel.  Ex parte Longoria, App. No. WR-14,964-02, at supp. p. 18.  This factual finding is entitled to a presumption of correctness, and petitioner has not presented clear and convincing evidence to overcome the presumption of correctness.  Petitioner has also presented nothing to suggest that the state court's determination that actions by his counsel did not render his plea involuntary was contrary to or an unreasonable application of federal law.

It is respectfully recommended that to the extent petitioner claims his plea was involuntary due to actions of his counsel, such claim is without merit.

### b.  Petitioner's Allegation That the Prosecutor Coerced His Plea.

Petitioner has also failed to show that the prosecutor's warnings about what type of sentence he could receive constitute threats.  He has presented no evidence that the state used mental coercion, or otherwise compromised the voluntariness of his guilty plea.  A "'guilty plea is not rendered invalid because it ... is motivated by fear of greater punishment.'"  Flores v. Estelle, 578 F.2d 80, 85 (5th Cir. 1978) (citations omitted).  The record establishes that the guilty plea was a voluntary and

intelligent choice among the options available to petitioner.  He has not presented anything more than a conclusory assertion that the agreement was coerced and his plea involuntary.  See United States v. Rivera, 191 Fed. Appx. 309, 311 (5th Cir. July 24, 2006) (per curiam) (unpublished) (finding that conclusory assertion that plea was involuntary is insufficient).

Petitioner has also failed to present any valid reason why the state court's determination of this issue was contrary to federal law or unreasonable.  It is respectfully recommended that to the extent petitioner claims that the assistant district attorney's conduct renders his plea involuntary, such claim is without merit.

> ### c.    Petitioner's Allegation That His Plea Was Involuntary Because the Judge Did Not Properly Admonish Him.

Petitioner claims that the trial judge failed to properly admonish him regarding the sex offender registration requirement, thus rendering his plea uninformed and involuntary.  (D.E. 1, at 11).

As a preliminary matter, the state court found that petitioner did know of the sex offender registration requirement, and this factual finding is entitled to a presumption of correctness.  The state court adopted as correct counsel's affidavit, which stated in part:

> I discussed registration as a sex offender with

24

Applicant repeatedly.  Applicant did not like the
registration requirement and it seemed that the
requirement might prove a sticking point in plea
negotiations.  I explained that the registration
requirement could not be "negotiated out" of any plea
agreement; that registration was required by law.  I also
told applicant that it was a separate offense not to register
as a sex offender.  Applicant understood my admonitions
and explanations.  Furthermore, Applicant signed and
understood all the admonishments given to him by the
court prior to his plea of guilty.  Applicant understood
my explanations of the many consequences of entering a
guilty plea to the instant offense.  Applicant discussed
my explanations intelligently, and it was clear that he
understood the consequences of his plea.

Ex parte Longoria, App. No. WR-14,964-02, at supp. p. 16.  Petitioner has not

presented any clear and convincing evidence to overcome the presumption of

correctness to which the state court's factual findings are entitled, but instead has

only presented self-serving conclusory assertions that he was not properly

admonished before pleading guilty.

The Fifth Circuit has held that a knowing, voluntary, and intelligent plea

"requires that the defendant be informed of the consequences of his plea, however,

'[t]he defendant need only understand the direct consequences of the plea; he need

not be made aware of every consequence that, absent a plea of guilty, would not

otherwise occur.'"  Duke v. Cockrell, 292 F.3d 414, 416 (5th Cir. 2002) (per

curiam) (citation omitted) (finding that requirement that sex offender admit guilt to

successfully complete a treatment program was a collateral consequence).  "[T]he direct consequences of a defendant's plea are the immediate and automatic consequences of that plea such as the maximum sentence length or fine."  Id. at 417 (citation omitted).

Sex offender registration is a collateral consequence of petitioner's conviction.  See Williamson, 151 F.3d at 1183-84; see also Leslie, 296 F.3d at 522-23; Mitschke, 129 S.W.3d at 135.  However, even if sex offender registration were not a collateral consequence of petitioner's conviction, he was aware of the requirement.  Furthermore, he has not shown how the state court's conclusion that his plea was voluntary and that he received adequate admonishments was unreasonable or contrary to federal law.

Petitioner signed a written statement that he understood the admonishments given to him, including that his lawyer explained the plea bargain adequately to him.  (D.E. 9, Ex. A, at 11).  He has wholly failed to present any evidence that his plea was not voluntary.  It is respectfully recommended that petitioner's claim that his plea was coerced and involuntary is without merit.

**E.     Petitioner's Claim That Exculpatory Evidence Was Withheld.**

Petitioner claims that the state suppressed evidence favorable to him.  (D.E. 1, at 10).

1.      **Standard of Review Pursuant to <u>Brady v. Maryland</u>.**

In <u>Brady v. Maryland</u>, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."  373 U.S. 83, 87 (1963).  The prosecution "need not disgorge *every* piece of evidence in its possession ... [but] has an affirmative duty to disclose to the defense evidence that is favorable to the accused and material to guilty."  <u>Rector v. Johnson</u>, 120 F.3d 551, 558 (5th Cir. 1997) (citing <u>United States v. Bagley</u>, 473 U.S. 667, 674 (1985)) (emphasis in original).  <u>Brady</u> applies to both impeachment and exculpatory evidence.  <u>Hudson v. Whitley</u>, 979 F.2d 1058, 1066 (5th Cir. 1992) (per curiam) (citing <u>Bagley</u>, 473 U.S. at 676).

In addressing a <u>Brady</u> claim, the Fifth Circuit has explained that:

> A defendant must prove the following to establish a <u>Brady</u> violation: (1) the prosecution suppressed evidence, (2) the suppressed evidence was favorable to the defense and (3) the suppressed evidence was material to the defense.  The test for materiality is whether there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  A reviewing court may consider any adverse effects the prosecutor's failure to release information might have had on the defendant's preparation and presentation of the case.

<u>Derden v. McNeel</u>, 938 F.2d 605, 617 (5th Cir. 1991) (citations omitted).  The

27

Fifth Circuit also requires that petitioner show that "discovery of the allegedly favorable evidence was not the result of a lack of due diligence."  <u>Rector</u>, 120 F.3d at 558 (citations omitted).  The state does not have a duty to disclose information that is available from other sources.  <u>Id.</u> at 559 (citation omitted).  In order to obtain relief on a <u>Brady</u> claim, petitioner must "demonstrate a reasonable probability that, but for the error, 'the result of the proceeding would have been different.'"  <u>Barrientes v. Johnson</u>, 221 F.3d 741, 756 (5th Cir. 2000) (citation omitted) (stating that <u>Brady</u> claims are reviewed using the "reasonable probability" standard).

### 2.    Petitioner Fails to Establish A <u>Brady</u> Claim.

Petitioner claims that the state withheld evidence that was favorable to him. (D.E. 1, at 10).  He claims that the victim provided an affidavit recanting her allegations against him, but that the state and his counsel withheld the statement and threatened harsher punishment if he chose to go to trial.  <u>Id.</u>  Petitioner does not dispute that he was aware of the evidence at the time he pleaded guilty.  In fact, petitioner notes that <u>he presented the written statement from the victim</u> to his counsel.  (D.E. 21, at 13).  Thus, he cannot claim that the evidence was suppressed by the prosecution.  In addition, he has not shown that the state court's adjudication of this claim was contrary to federal law or unreasonable.

It is respectfully recommended that petitioner's claim that the state withheld exculpatory evidence is without merit.

**F.   Petitioner's Claims of Ineffective Assistance of Counsel are Without Merit.**

Petitioner claims that his counsel rendered ineffective assistance by failing to file a motion to quash his indictment, aiding the prosecutor in suppressing favorable evidence, and failing to object to improper sentencing.  (D.E. 1, at 10-11).

**1.     Standard of Review Pursuant to <u>Strickland v. Washington</u>.**

The Fifth Circuit has stated that when the validity of a plea is contested, "whether [the petitioner] received constitutionally deficient counsel prior to pleading guilty is relevant to the validity of the plea itself."  <u>United States v. Guidry</u>, 462 F.3d 373, 378 n.6 (5th Cir. 2006) (citation omitted).  If a habeas petitioner complains that his guilty plea was involuntary due to ineffective assistance of counsel, the Fifth Circuit has established that "he must meet the two-pronged test set out in *Strickland v. Washington*, 466 U.S. 668, 678 ... (1984)."  <u>Uresti v. Lynaugh</u>, 821 F.2d 1099, 1101 (5th Cir. 1987).  Therefore, "[t]o demonstrate ineffectiveness of counsel in the plea bargaining arena, [petitioner] must establish that his trial counsel's performance: (1) fell below an objective standard of reasonable competence and (2) that he was prejudiced by his counsel's

deficient performance." James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995) (citation

omitted). Petitioner has the burden of proof under the Strickland test. See Carter

v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997). In order to show counsel's

performance was deficient, petitioner must show that "counsel made errors so

serious that counsel was not functioning as the 'counsel' guaranteed the defendant

by the Sixth Amendment." Strickland, 466 U.S. at 687.

Counsel's challenged conduct should be evaluated from the perspective of

counsel at the time the conduct occurred. Id. at 690. Due to the difficulties

inherent in engaging in this analysis without being tainted by "the distorting effects

of hindsight," a court's review should be highly deferential to counsel. Id. at 689.

The reviewing court must give great deference to counsel's performance, strongly

presuming that counsel has exercised reasonable professional judgment. Id. at 690;

see also Romero v. Lynaugh, 884 F.2d 871, 876 (5th Cir. 1989) (there is a strong

presumption that counsel's conduct falls within a wide range of reasonable

professional assistance).

The Fifth Circuit has established that with respect to a guilty plea, counsel

"must actually and substantially assist his client in deciding whether to plead guilty

... [and] provide the accused an 'understanding of the law in relation to the facts.'"

Herring v. Estelle, 491 F.2d 125, 128 (5th Cir. 1974) (citations omitted); see also

Pollinzi v. Estelle, 628 F.2d 417, 419 (5th Cir. 1980) (per curiam) ("Where a defendant pleads guilty, counsel's responsibility is to determine whether the plea is entered voluntarily and knowingly, ... to assist his client actually and substantially in deciding whether to plead guilty, ... to provide the accused with an understanding of the law in relation to the facts, ... and to give advice that permits the accused to make an informed and conscious choice.") (citations omitted).  The attorney's advice "need not be perfect, but it must be reasonably competent."  Id. (citation omitted).  For a petitioner to succeed on a complaint that counsel rendered ineffective assistance in connection with a guilty plea, he must prove that counsel's "misadvice fell short of 'an objective standard of reasonableness.'"  Czere v. Butler, 833 F.2d 59, 63 (5th Cir. 1987) (citation omitted).  A petitioner must show that "the advice he received from [his attorney] during the course of the representation and concerning the guilty plea was not 'within the range of competence demanded of attorneys in criminal cases.'"  Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983) (quoting Tollett v. Henderson, 411 U.S. 258, 266 (1973)).

A reviewing court need not consider the deficiency prong if it concludes that petitioner has failed to show actual prejudice.  Strickland, 466 U.S. at 697; Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995).  "The Supreme Court [has also] emphasized that this two-part Sixth Amendment inquiry need proceed in no

particular order." Czere, 833 F.2d at 63 (citation omitted).  The Fifth Circuit has held that a petitioner must establish "actual prejudice as a result of his counsel's ineffectiveness."  Moody v. Johnson, 139 F.3d 477, 482 (5th Cir. 1998) (citations omitted).  "When a defendant complains about attorney error concerning a plea, *Strickland*'s prejudice prong requires a showing that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial."  Uresti, 821 F.2d at 1101 (citing Hill, 474 U.S. at 59); accord Theriot v. Whitley, 18 F.3d 311, 312 (5th Cir. 1994) (per curiam) (citing Hill).

In addition, conclusory allegations of ineffective assistance of counsel do not give rise to a constitutional claim for federal habeas relief.  See Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) ("Because [the petitioner] failed to set forth the nature of *any* of the errors trial counsel purportedly failed to preserve and did not assert any resulting prejudice, the district court properly determined that these three claims of ineffective assistance were conclusory.") (emphasis in original).  The Fifth Circuit has further held that "'[i]n the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced [petitioner], ... we [can find] no merit to these [claims].'"  Id. (quoting Barnard v. Collins, 958 F.2d 634, 642 (5th Cir. 1992)).

Finally, in order to prove that he is entitled to federal habeas relief due to

ineffective assistance of counsel, petitioner must overcome the presumption of

correctness to which the state court's findings are entitled.  See Schaetzle v.

Cockrell, 343 F.3d 440, 444 (5th Cir. 2003) ("It bears repeating that the test for

federal habeas purposes is *not* whether [petitioner made a showing under

*Strickland*, but] ... whether the state court's decision-that [the petitioner] did *not*

make the *Strickland*-showing-was contrary to, or an unreasonable application of,

the standards, provided by the clearly established federal law (*Strickland*), for

succeeding on his IAC claim.") (emphasis in original).  The Fifth Circuit has

determined that "under AEDPA a state court decision rejecting a *Strickland* claim

must be accepted unless it was an unreasonable application of its teaching."

Granados v. Quarterman, 455 F.3d 529, 534 (5th Cir.), cert. denied, 127 S. Ct. 732

(2006).

### 2.  Petitioner's Claim That Counsel Failed to File a Motion to Quash the Defective Indictment is Without Merit.

Petitioner claims that counsel rendered ineffective assistance because

counsel failed to file a motion to quash the defective indictment.  (D.E. 1, at 10).

In addressing this claim for petitioner's state habeas application, his counsel noted:

> We had a motion to quash the indictment prepared;
> however, after discussion with Applicant, we decided not
> to file said motion because we did not want to take a risk
> that could result in the State enhancing the indictment.
> Additionally, the indictment alleged a third-degree felony

when, in fact, the offense should have been indicted as a
second-degree felony (indecency with a child by contact
is a second-degree felony).  Therefore, it would not have
benefited [sic] Applicant to file the motion to quash the
indictment and to take an unnecessary risk.  As I stated,
we discussed the problem with the indictment and
decided that it was in his best interest to proceed with the
indictment as it was.  Applicant was aware of the mistake
in the indictment, and we pursued the strategy we agreed
upon....

[A]lthough the indictment was defective, in this
case by not alleging a culpable mental state, it was to
Applicant's advantage not to pursue a motion to quash.
Had I filed this motion and had the trial court granted it,
the State could have re-indicted Applicant as a habitual
felony offender.  This would have resulted in an
increased penalty range; that is, twenty-five to ninety-
nine years or life.

Ex parte Longoria, App. No. WR-14,964-02, at supp. p. 14.  The state court

accepted petitioner's counsel's assertions as true, and petitioner has not presented

any evidence to overcome the presumption of correctness to which the state court's

factual findings are entitled.  See id. at supp. p. 18.  Petitioner has not shown how

his counsel's advice to forego pursuing a motion to quash the indictment was not

within the range of competence expected of counsel in criminal cases.  Moreover,

he has not shown that but for his counsel's failure to file a motion to quash the

indictment, he would not have pleaded guilty.  Finally, he has also not shown how

the state court's adjudication of this claim was contrary to federal law or

34

unreasonable.

It is respectfully recommended that petitioner's claim that he received ineffective assistance of counsel because his counsel failed to file a motion to quash his indictment is without merit.

### 3.   Petitioner's Claim That Counsel Aided in the Suppression of Favorable Evidence is Without Merit.

Petitioner claims that counsel rendered ineffective assistance by aiding in the suppression of favorable evidence.  (D.E. 1, at 10).  His counsel addressed this claim in connection with petitioner's state habeas application, explaining that:

>        While preparing this case for trial, the complaining witness was supposed to come by my office to indicate that she would, in fact, give testimony favorable to Applicant.  However, the complaining witness never came by the office to discuss her testimony or the allegations that she made against Applicant.  Complaining witness' mother, however, did discuss the case with me.  Complaining witness' mother alleged that Applicant's wife paid complaining witness to give the statement that Applicant contends is "favorable to him"....  Complaining witness' mother also contended that Applicant's wife offered complaining witness income-tax money if complaining witness would provide favorable testimony to Applicant at trial.  Additionally, complaining witnesses' [sic] mother stated that complaining witness did not want to speak with me and that complaining witness wanted Applicant prosecuted for the instant offense.  I discussed this with Applicant prior to trial.  This is when he said he would accept a four-year plea offer.  I was able to negotiate a two-year plea agreement, which Applicant accepted without

coercion, duress, or intimidation.

Ex parte Longoria, App. No. WR-14,964-02, at supp. p. 15-16.  The state court

accepted this assertion as true, and petitioner has not presented clear and

convincing evidence to overcome the presumption of correctness to which the state

court's factual findings are entitled.  He has failed to prove that the evidence was

withheld, as he knew of the evidence at the time he pleaded guilty.  (D.E. 21, at

13).  He has also not shown that the state court's adjudication of this claim was

contrary to federal law or unreasonable.

It is respectfully recommended that petitioner's claim that his counsel

rendered ineffective assistance by aiding in the suppression of favorable evidence

is without merit.

### 4.    Petitioner's Claim That Counsel Failed to Object to Improper Sentencing is Without Merit.

Petitioner claims that counsel rendered ineffective assistance because

counsel failed to object to improper sentencing.  (D.E. 1, at 11).

Petitioner's trial counsel addressed this claim pursuant to petitioner's state

habeas application:

>           Here, Applicant, after he pleaded guilty, received
> his two-year sentence pursuant to the plea agreement.  He
> did not express a desire to have a protracted sentencing
> hearing.  At the time, he seemed satisfied to plea to two
> years in prison.  We had already discussed, at length, his

> criminal history and the enhancement that he could have
> received had the State re-indicted him as a habitual
> felony offender.

Ex parte Longoria, App. No. WR-14,964-02, at supp. p. 16.  The state court

adopted as true counsel's assertions regarding a sentencing hearing.  Ex parte

Longoria, App. No. WR-14,964-02, at supp. p. 18.  Petitioner has not presented

any clear and convincing evidence to overcome the presumption of correctness to

which the state court's factual findings are entitled.  He has not shown that he

would not have pleaded guilty but for his counsel's advice or actions, and he

cannot successfully assert that he suffered prejudice as a result of his counsel's

actions.  Furthermore, he has not shown that the state court's adjudication of this

claim was unreasonable or contrary to federal law.

It is respectfully recommended that petitioner's claim that he received

ineffective assistance of counsel because counsel failed to object to improper

sentencing is without merit.

## G.   Petitioner's Claim That His Sentence Was Illegal Fails to State a Claim for Federal Habeas Relief.

Finally, petitioner claims that the sentence that he received was illegal

because he was "sentenced by and thru [sic] an illegal and fundamentally defective

sentencing trial."  (D.E. 1, at 11).  He claims that he "was sentenced prior to the

expiration of the time allowed for the filing of a Motion in Arrest of Judgment or a

Motion for a new trial."  Id.  He asserts that he did not waive the ten-day time limit

that he was allowed by law.  Id.

Petitioner's claim must fail because it does not state a constitutional

violation.  Moreover, petitioner relies on an outdated Texas statute that is no longer

in effect.  See Tex. Code Crim. P. § 42.03 (Vernon 1971).  However, the Texas

legislature modified the Texas Code of Criminal Procedure and the provision

petitioner references no longer exists.  See Tex. Code Crim. P. § 42.03 (Vernon

2003).

It is respectfully recommended that petitioner's claim that his sentence was

illegal because the court did not wait ten days after the finding of guilt to

pronounce his sentence fails to state a claim for federal habeas relief.

## VII.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Fifth Circuit from a final order in a

habeas corpus proceeding "unless a circuit justice or judge issues a certificate of

appealability."  28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a

notice of appeal, it is respectfully recommended that this Court nonetheless address

whether he would be entitled to a certificate of appealability.  See Alexander v.

Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may sua sponte rule on

a certificate of appealability because "the district court that denies a petitioner

relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability "may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  This standard requires a § 2254 petitioner to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483).

As to claims that a district court rejects solely on procedural grounds, a petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists

of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Here, it is respectfully recommended that reasonable jurists could not debate the denial of petitioner's § 2254 petition on substantive or procedural grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484).  Accordingly, it is respectfully recommended that the Court find that petitioner is not entitled to a certificate of appealability as to his claims.

## VIII.  RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that respondent's motion for summary judgment, (D.E. 9), be granted, and that petitioner's petition for writ of habeas corpus be dismissed for want of jurisdiction, or alternatively, because petitioner's petition is time barred and fails to state a valid claim for federal habeas relief.  It is further respectfully recommended that petitioner be denied a certificate of appealability.

Respectfully submitted this 21st day of June 2007.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 8(b) of the Rules Governing § 2254 Cases; Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 02-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except on grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).